UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES ) | |
| ) | |
| ) | |
| v.            ) | No. 05-cr-10076-NMG |
| ) | |
| ) | |
| KENYATTA ELIJAH JAHKUR ) | |

PRELIMINARY MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO SUPPRESS EVIDENCE ILLEGALLY SEIZED

**Statement of the Case**

The defendant, Kenyatta Elijah Jahkur, is charged in the above-referenced indictment with possession of two firearms and ammunition by a convicted felon, in violation of Title 18 United States Code, §922(g)(1).  The charge arose out of warrantless stop, search, and seizure of Jahkur on a public street in Quincy, Massachusetts on November 11, 2004.  Jahkur has filed a Motion to Suppress Evidence Illegally Seized seeking to suppress the fruits of that stop, search, and seizure, including all statements alleged to have been made by him at that time.

**Facts**

The following facts are derived from Jahkur's Affidavit in Support of Motion to Suppress Evidence Illegally Seized dated September 19, 2005.  On November 13, 2004 at approximately 3:00 o'clock A.M. Jahkur was walking alone on Faxon Park Road in Quincy, Massachusetts.  While he was in the vicinity of 81 Faxon Park Road, a police officer in a marked Quincy Police Department cruiser pulled alongside, and the officer said to him, "Hey, what's going on," or words to that effect.  Jahkur replied that he had been in an accident with his girlfriend's car and was looking for a telephone to report the accident and call for assistance.  At the time, Jahkur did not own or possess a cellular

telephone.

The officer got out of his cruiser, pulled his gun out and pointed it at Jahkur, told him to put his hands up and come toward the cruiser. The officer asked Jahkur if he had any weapons on him, and Jahkur replied that he did not. The officer then asked Jahkur if he had any means of identification, and Jahkur replied that he had a driver's license in his wallet which was in his back pocket. The officer reached into Jahkur's back pocket, removed his wallet from it, found and examined his driver's license. The officer then pat-frisked Jahkur and found two firearms on his person. Jahkur was arrested and placed in the back of the cruiser. The officer did not have an arrest warrant for Jahkur or a warrant to search him. Jahkur did not give the officer permission to search him.

**Argument**

"A defendant who files a motion to suppress ordinarily carries the burden of proof. (Citation omitted). However, where a search is conducted without a warrant, as is the case here, the burden shifts to the government to demonstrate by a preponderance of the evidence that the warrantless search was conducted pursuant to one of the exceptions to the warrant requirement. (Citation omitted)." *United States v. Rosario,* 2005 WL 1484519 (D. Del. 6/22/05);[1] See *United States v. Acosta-Colon,* 157 F.3d 9, 14 (1st Cir. 1998) and cases cited. The search of Jahkur in the instant case cannot be justified as a search based on consent or probable cause coupled with exigent circumstances. Neither can it be sustained as a lawful inventory search or a search pursuant to the so-called "community caretaking" function of the police. The only possible constitutionally permissible ground for the stop and search of Jahkur is the "stop and frisk" exception to the warrant requirement articulated in *Terry v. Ohio,* 392

---

[1] The government can meet that burden, if at all, by presenting live testimony subject to cross-examination at a hearing. Not knowing what evidence the government may adduce at a hearing, Jahkur respectfully reserves the

2

U.S. 1 (1968).

The fundamental holding of *Terry* is that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Id.* at 22. In order to justify a *Terry*-type search, the officer who conducted the search "must be able to articulate something more than an inchoate and unparticularized 'hunch.'" *United States v. Sokolow,* 490 U.S. 1, 7 (1989). In evaluating the constitutional propriety of a *Terry*-type stop, courts apply a two-prong test. *United States v. Owens,* 167 F. 3d 739, 748 (1st Cir. 1999). The Court must "first determine whether the officer['s] actions were justified at [their] inception, and if so whether the actions undertaken by the officer[s] following the stop were reasonably responsive to the circumstances justifying the stop in the first place as augmented by information gleaned by the officer[s] during the stop." *United States v. Trueber,* 238 F.3d 79, 92 (1st Cir. 2001. "The first part of the inquiry is satisfied if the officers can point to specific and articulable facts which, taken together with rational inferences derived from those facts, reasonably show that an investigatory stop was warranted." *United States v. Maguire,* 359 F. 3d 71, 76 (1st Cir. 2004). (Citations omitted).

In light of the factual asseverations set forth in Jahkur's affidavit in support of his motion to suppress,[2] the stop of Jahkur was not reasonable at its inception. Jahkur was walking on Faxon Park Road in Quincy at approximately three o'clock on a mid-November morning.[3] There were no obvious signs that he had committed, was committing, or was about to commit a crime. For example, he was not brandishing a

---

right to address any such evidence in a supplemental memorandum of law.

[2] Once again, Jahkur notes that he will not be in a position to address the government's evidence until after a hearing on the motion to suppress, at which the government shall have the burden of proof.

[3] It is beyond dispute that it is not unlawful to be walking on a public street in the middle of the night.

3

weapon of any kind. Jahkur had been in an accident with his girlfriend's car, did not possess a cellular telephone, and was looking for a telephone to report the accident and call for assistance. However, the Quincy officer who pulled alongside him was unaware that Jahkur had been in an automobile accident until after Jahkur told him so in response to the officer asking him, "Hey, what's going on?" Upon hearing Jahkur's reply, the officer got out of his cruiser, pointed a gun at Jahkur, and ordered him to put his hands up and approach the cruiser. At that point, the officer had no evidence to believe reasonably that Jahkur had committed any crime; thus, there was no need to detain him. Therefore, it is clear that the officer's actions were unreasonable at their inception.

The second prong of the Court's analysis is consideration of "whether the scope of the investigatory stop was reasonable under the circumstances." *United States v. Maguire, supra* at 77; *United States v. Trueber, supra.* Assuming *arguendo* that the officer's initial actions toward Jahkur were constitutionally justified, the government yet cannot prove that his actions undertaken thereafter "were reasonably responsive to the circumstances justifying the stop in the first place as augmented by information gleaned by the officer[s] during the stop." *United States v. Trueber, supra.*

According to Jahkur's affidavit, after Jahkur told the officer that he had been in an accident with his girlfriend's car and was looking for a telephone to use, the officer got out of his cruiser, became aggressive in demeanor, drew his gun and pointed it at Jahkur, told him to put his hands up and approach the cruiser. Jahkur was not obviously armed, yet the officer asked him if he had any weapons on him, and Jahkur replied in the negative. The officer then asked Jahkur for identification, and Jahkur replied that he had his driver's license in his wallet in his back pocket. The officer then reached in Jahkur's

4

back pocket, removed his wallet and license, and examined the license.  There is no evidence that there was anything amiss with Jahkur's license.  Nevertheless, the officer then performed a pat-frisk of Jahkur and found the two firearms that are the subject of the instant indictment.

"Limited searches of a person for weapons are constitutionally permissible adjuncts to a *Terry* stop if 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or the safety of others was in danger.'"  *United States v. Nee,* 261 F. 3d 79, 83 (1st Cir. 2001) (Quoting *Terry v. Ohio, supra* at 27).  At the point at which the officer conducted the pat-frisk of Jahkur, the only information he had in his possession was that Jahkur had been in an automobile accident, was not at the scene of the accident, but was on foot looking for a telephone.  Jahkur was not obviously armed and was not acting in a threatening or aggressive manner.  The officer examined Jahkur's license and found nothing amiss.  He had no information that Jahkur was armed and dangerous or that he was wanted on outstanding criminal charges.  He had no information as to Jahkur's possible criminal record.  In short, all the officer knew was that Jahkur had been in an automobile accident and that he was walking on a public street apart from the scene of the accident at three o'clock in the morning.  This is simply not enough to warrant a reasonably prudent man in the officer's position believing that his safety or the safety of others was in danger so as to warrant a pat-frisk for weapons.

In contrast to the facts of the instant case were those presented in *United States v. Maguire, supra.*  There, local police responding to a dispatch of an armed bank robbery encountered the disheveled defendant emerging from the back yard of a private residence in the vicinity of where the suspected stolen getaway car was found abandoned.  *Id.* at 73-4.  On those facts, the First Circuit held that the police had a reasonable and articulable

suspicion to warrant stopping Maguire and questioning him, *Id.* at 77, and that their seizure of him did not exceed the scope of a permissible *Terry* stop. *Id.* at 77-9. The facts of the instant case are a far cry from those in *Maguire,* do not justify the actions of the police toward Jahkur, and present a compelling case for the suppression of the evidence found on him.

**Conclusion**

For all the foregoing reasons the defendant's motion to suppress ought to be allowed in all respects.

Respectfully submitted,
Kenyatta Elijah Jahkur
By his attorney,

/s/Michael F. Natola
_____

September 22, 2005

MICHAEL F. NATOLA
BBO No. 367580
63 Atlantic Avenue
Boston, Massachusetts 02110
Tel. (617) 367-1199
Fax (617) 227-3384
E-mail MFNatola@aol.com

**CERTIFICATE OF SERVICE**

I, Michael F. Natola, attorney of record for the defendant, hereby certify that a true copy of the foregoing preliminary memorandum of law has been served the above date, electronically and by first class mail, upon Assistant U.S. Attorney William H. Connolly.

/s/Michael F. Natola
_____
MICHAEL F. NATOLA