```
                    United States District Court
                      District of Massachusetts
_____
                               )
UNITED STATES OF AMERICA       )
                               )
          v.                   )
                               )   Criminal Action No.
KENYATTA ELIJAH JAHKUR,        )   05-10076-NMG
                               )
          Defendant.           )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The defendant, Kenyatta Elijah Jahkur ("Jahkur"), has been charged by the government with one count of felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Jahkur contends that he was subjected to an unlawful, warrantless search and seizure and that the Court should therefore suppress evidence of two firearms allegedly found on his person and all other fruits of the allegedly unlawful conduct.

The government opposes Jahkur's motion on the grounds that he consented to the search and seizure or, in the alternative, that even if he did not consent, the search and seizure were lawful under Terry v. Ohio, 392 U.S. 1 (1968).

The Court held a hearing on the defendant's motion to suppress on December 19, 2005. After considering the materials submitted by the parties and the evidence offered at the hearing,

the Court finds that Jahkur consented to the warrantless search and seizure and will therefore deny his motion to suppress.

## I. Background

Jahkur was in a single-car accident in Quincy, Massachusetts in the early morning hours of November 11, 2004. He left the accident scene on foot and was carrying no mobile phone. The defendant and government offer different accounts of what occurred thereafter.

According to an affidavit of Jahkur, he was walking on a road in Quincy around 3:00 a.m. that morning when a police cruiser pulled alongside him and the officer asked him what was going on. Jahkur responded that he had been in an accident in his girlfriend's car and was looking for a telephone so that he could request assistance. The defendant asserts that the officer then stepped out of his car, pointed his gun at him and told him to raise his hands and move toward the cruiser.

The officer asked the defendant if he had any weapons on him and Jahkur responded that he did not. The officer then asked if the defendant had any identification. Jahkur replied that his driver's license was in his wallet in his back pocket, and the officer proceeded to retrieve the wallet and license. The officer then patted down the defendant, allegedly discovering two firearms on his person. Jahkur was then handcuffed and informed that he was under arrest. He maintains that he never gave the

officer permission to search him.  In addition to his affidavit, the defendant supported his motion at the hearing by cross-examining the government's witness and presenting oral argument but no oral testimony.

According to the testimony at the hearing of a Quincy police officer, Sergeant Gregory Goyette ("Sgt. Goyette"), he was on duty in a marked car the morning of November 11, 2004 when he heard reports of an accident involving a single car whose driver had left the scene.  After observing the site of the accident and hearing a radio report as to whom the car was registered, Sgt. Goyette began to drive toward the address reported.

About one-half mile from the accident scene, he spotted a man who was later identified as Jahkur walking on a sidewalk. The man appeared to glance over his shoulder at the police cruiser and then turned sharply to his left, cutting across the lawn of a house that was situated at an intersection and stepping behind a tall bush by the front door.  When the officer turned the corner in his car, he saw Jahkur standing in front of the door but not knocking or otherwise appearing as though he intended to enter.  The defendant neither looked at Sgt. Goyette nor otherwise acknowledged his presence.

The officer left his cruiser and when he had walked halfway across the lawn, Jahkur stepped forward to meet him.  Sgt. Goyette asked what was going on, to which Jahkur responded, "I'm


so glad to see you". He told the officer that he had been in an accident in his girlfriend's car. When Sgt. Goyette asked to see a license, Jahkur produced it for him. He said that he had gone to the front door of the house in order to ask to use a phone. He then asked Sgt. Goyette for a ride to his girlfriend's house. The officer agreed provided that they stop by the scene of the accident first and the defendant acquiesced. According to Sgt. Goyette, Jahkur did not appear intoxicated or injured and he was responsive to the officer's questions.

As they walked toward the cruiser, Sgt. Goyette became suspicious. Jahkur seemed nervous to him, sweating a bit and avoiding eye contact. Furthermore, his story did not make sense. Sgt. Goyette realized that Jahkur had walked about one-half mile through a residential area before approaching this particular front door.

Before permitting him to enter the police vehicle which was not equipped with any protective barrier between the front and back seats, Sgt. Goyette asked the defendant whether he had any weapons on him. Jahkur answered no and raised both arms approximately 45 degrees, which the officer interpreted as an invitation to pat him down for weapons. Upon patting Jahkur down, the officer felt a large hard object at his hip which he suspected was a firearm. He grabbed its handle and asked the defendant whether he had a gun. The defendant stammered. The

officer then asked if he had a license to carry a gun at which point Jahkur said "just let me go". The officer instructed Jahkur to get down on the ground and when he saw the defendant tense up, as though he might resist or flee, Sgt. Goyette took him to the ground. The officer testified that his own firearm was never removed from its holster during the episode.

Once Sgt. Goyette had Jahkur on the ground, an Officer King arrived at the scene. That officer handcuffed Jahkur and conducted a further search during which he found a second firearm. Jahkur was arrested and transported to the police station by a third officer in a police wagon.

## II. Discussion

The government must show that the search and seizure challenged by the defendant either did not implicate the Fourth Amendment or otherwise fell within a recognized exception to its requirements by virtue of its reasonableness. See, e.g., Florida v. Jimeno, 500 U.S. 248, 250 (1991); United States v. Doe, 61 F.3d 107, 109 (1st Cir. 1995). In this case, the Court must consider the reasonableness both of the initial encounter between Sgt. Goyette and Jahkur and the search that occurred thereafter.

### A.  Alleged Seizure

With respect to the initial encounter, the government contends that it did not constitute a seizure and therefore does not implicate the Fourth Amendment. The Supreme Court has held

that general questioning by the police of an individual in public does not constitute a seizure. See, e.g., Florida v. Bostwick, 501 U.S. 429, 434 (1991). Moreover, a person is not "seized" unless he reasonably believes that his freedom of movement has been restrained, see United States v. Mendenhall, 446 U.S. 544, 554 (1980), by virtue of an application of "physical force ... *or*, when that is absent, *submission* to the assertion of authority", California v. Hodari D., 499 U.S. 621, 626 (1991).

In addition, the government maintains that even if the initial encounter was not consensual, Sgt. Goyette's "stop" of Jahkur was nonetheless justified by Terry v. Ohio, in which the Supreme Court held that the Fourth Amendment is not violated where police

> in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.

Terry, 392 U.S. at 22. See also United States v. Acosta-Colon, 157 F.3d 9, 14 (1st Cir. 1998) (citations omitted). In this case, the government submits that because leaving the scene of an accident is a crime in Massachusetts, albeit a non-arrestable offense, Sgt. Goyette's investigation of that crime justified his interrogation of the defendant.

On the other hand, Jahkur contends in an affidavit that he was detained without a reasonable basis when the officer pointed a gun at him and instructed him to raise his hands and move

toward the vehicle.  That contention lacks credibility.

The Court finds that Sgt. Goyette's account of the encounter was credible and that, under the facts he presented, the exchange between the officer and Jahkur did not constitute a seizure for Fourth Amendment purposes.  The defendant's affidavit in which he describes a very different interaction with Sgt. Goyette was not only flatly contradicted by the officer's testimony, but the affidavit itself contains numerous inconsistencies that undermine its reliability.  For example, Jahkur asserts that he did not own or possess a cellular telephone at the time of the accident yet two such phones were found in the vehicle he crashed.  In addition, although the defendant asserts that Sgt. Goyette handcuffed, arrested and transported him for booking, there is more believable evidence that two officers other than Sgt. Goyette handcuffed Jahkur and transported him to the police station.

Because the Court concludes that there was no seizure of Jahkur, it need not address whether the encounter was reasonable under Terry.

### B.   Alleged Search

With respect to Sgt. Goyette's search of Jahkur, the government contends that Jahkur gave his consent when he raised his arms in response to the officer's question about weapons.  In the alternative, the government avers that even if Jahkur did not

consent to be searched, the officer's patdown was nonetheless a reasonable Terry "frisk".

The government bears the burden of demonstrating, by a preponderance of the evidence, that consent was "knowingly, intelligently, and voluntarily given". United States v. Marshall, 348 F.2d 281, 285-86 (1st Cir. 2003) (citation omitted). Whether consent was given voluntarily is determined upon consideration of the totality of the circumstances. Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). It is not necessary that consent be provided verbally or in writing; it may be inferred from the conduct of the defendant. See United States v. Miller, 589 F.2d 1117, 1130-31 (1st Cir. 1978); Robbins v. MacKenzie, 364 F.2d 45, 48 (1st Cir. 1966). See also United States v. Zapata, 18 F.3d 971, 977-78 (1st Cir. 1994).

In this case, the Court finds that Jahkur voluntarily consented to be searched. Although the defendant averred at the hearing that it would be illogical for someone in his position, i.e., with two firearms on his person and a long criminal history, to have permitted an officer to search him, the Court credits Sgt. Goyette's testimony to that effect in light of the inconsistencies in Jahkur's affidavit. Furthermore, the Court finds that, even if the defendant did not raise his arms as alleged, he nonetheless gave his implied consent to be searched when he asked Sgt. Goyette for a ride to his girlfriend's house

and then moved toward the police cruiser.

Because the Court concludes that the search of Jahkur was justified by his consent, it need not address whether the search was also reasonable under <u>Terry</u>.

**ORDER**

Based on the foregoing memorandum, the motion to suppress of defendant Kenyatta Elijah Jahkur (Docket No. 13) is **DENIED**.

**So ordered.**

       /s/ Nathaniel M. Gorton
       Nathaniel M. Gorton
       United States District Judge

Dated: December 20, 2005